UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

ZINSSER BRANDS COMPANY, *et al.,*  )     Case No.: 1:06 CV 1230
                                                                                  )
                                                                                  )     JUDGE CHRISTOPHER A. BOYKO[1]
       Plaintiffs  )
                                                                                   )
vs.  )
                                                                                   )
THE GLIDDEN COMPANY d/b/a ICI PAINTS  )
                                                                                   )
       Defendant  )     <u>ORDER</u>

Plaintiffs Zinsser Brands Company and Zinsser Company, Inc. (together, "Plaintiffs" or "Zinsser") bring this action against The Glidden Company, d/b/a ICI Paints ("Defendant" or "Glidden") for infringement of registered trademarks under 15 U.S.C. § 1114(1). Plaintiffs seek a temporary restraining order ("TRO") enjoining Glidden from selling, distributing, or advertising products which infringe on Plaintiffs' trademarks. (ECF No. 4.)

The Court held a teleconference with counsel for both parties to this case on May 18, 2006, during which the court heard oral argument on the TRO motion. The Court has also reviewed the extensive briefing submitted by Plaintiffs and Defendant, as well as the various affidavits and exhibits attached to the filings. For the reasons stated below, the motion for a TRO (ECF No. 4) is denied. The court will hold a Preliminary Injunction hearing on June 5, 2006 at 3:30 p.m.

---

[1] This case was originally assigned to Judge Solomon Oliver, Jr. Judge Christopher Boyko is handling the motion for a temporary restraining order as the miscellaneous duty judge while Judge Oliver was unavailable.

## I. FACTS

Zinsser manufactures and sells primers and specialty painting products. (Pl. Compl. ¶ 7, ECF No. 1.) Zinsser's products are distributed nationally and worldwide. (*Id.* at ¶ 9.)

Glidden manufactures and sells decorative coatings and paints. (*Id.* at ¶ 32.) Glidden distributes its products for sale by third-party retail outlets, and also sells its products in its own ICI Paints company stores. (*Id.* at ¶ 33.) Glidden sells some of Zinsser's products in its ICI Paints stores. (*Id.* at ¶ 38.)

### A. SHIELDZ Mark and Alleged Infringement

Zinsser owns the trademark for the mark SHIELDZ which it uses in connection with primers for sealing walls. (*Id.* at ¶ 13.) SHIELDZ products are used to prepare surfaces for hanging wallpaper. (Zinsser website printouts and labels, ECF No. 8, Exs. 5, 7.) Zinsser has owned this trademark since 1985, and its SHIELDZ brand products have been continuously sold since that time. (Pl. Compl. ¶ 15, ECF No. 1.) In January, 2006, The Home Depot stopped selling wallpaper related coating products, such as SHIELDZ. (*Id.* at ¶ 22.)

The Home Depot and Glidden have been working together to develop a full line of primers and paints for sale in The Home Depot's stores. (Carolyn Resar Aff. ¶ 11, 12, ECF No. 8, Ex. A.) The new products are targeted at the professional market. (*Id.* ¶ 9.) The Home Depot is currently beginning a test market pilot project in which it is selling Glidden's new line of primers and paints in 180 stores in nine advertising markets. (Resar Aff. ¶ 14, ECF No. 8, Ex. A.) By the end of the day on May 19, 2006, Glidden estimates that 50% of the pilot project stores will be selling the new Glidden line. (*Id.* at ¶ 15.)

One of Glidden's new products is an interior latex paint, sold as Glidden SHIELD. (*Id.* at ¶ 17.) Glidden SHIELD is a mold and mildew resistant paint. (Glidden labels, ECF No. 8, Exs. 1, 2.) Zinsser

alleges that the Glidden SHIELD paint infringes on its mark for Zinsser SHIELDZ primer for sealing walls.

### B. SPOTPRIME and Alleged Infringement

Zinsser owns the trademark for the mark SPOTPRIME which it uses in connection with primer/sealers for wood and wood substitutes. (Pl. Compl. ¶ 24, ECF No. 1.) SPOTPRIME is a fast drying sealer used to seal wood products, and it is currently sold to manufacturers of wood products. (Thomas McNichols Aff. ¶¶ 25-26, ECF No. 4, Ex. 2.) Zinsser has owned this trademark since April 11, 2006, and has been using the mark since February, 2005. (Pl. Compl. ¶¶ 25-26, ECF No. 1.) Zinsser SPOTPRIME is not and has never been sold at The Home Depot.

Another of Glidden's new line of The Home Depot paints and primers is a primer sold as Glidden SPOT PRIMER. (Resar Aff. ¶ 17, ECF No. 8, Ex. A.) According to Glidden, "[s]pot primer is a generic term in our industry with respect to a primer that is used for tough spots such as stains. (*Id.* at ¶ 22.) Zinsser alleges that Glidden SPOT PRIMER infringes on its mark for Zinsser SPOTPRIME.

### II. TRO STANDARD

Federal Rule of Civil Procedure 65 governs the issuance of temporary restraining orders and preliminary injunctions. When ruling on a motion for a temporary restraining order or preliminary injunction, a district court must consider and balance four factors: (1) whether the movant has a strong or substantial likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without the relief requested; (3) whether granting the relief requested will cause substantial harm to others; and (4) whether the public interest will be served by granting the relief requested. *See Memphis Planned Parenthood, Inc. v. Sundquist*, 175 F.3d 456, 460 (6th Cir.1999); *Schenck v. City of Hudson*,

114 F.3d 590, 593 (6th Cir.1997). The Sixth Circuit has also held that "[i]n general, the likelihood of success that need be shown . . . will vary inversely with the degree of injury the plaintiff will suffer absent an injunction." *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982) (internal quotation and citation omitted).

### III. LAW AND ANALYSIS

### A. Likelihood of Success on the Merits

1. Legal Standard

The key to determining liability under 15 U.S.C. § 1114 for trademark infringement is "whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *E.g., Daddy's Junky Music Stores v. Big Daddy's Family Music Ctr.,* 109 F.3d 275, 280 (6th Cir. 1997). In evaluating whether use of a disputed mark is likely to cause confusion, the Sixth Circuit requires a court to examine and weigh the following eight factors:

> 1. strength of the senior mark; 2. relatedness of the goods or services; 3. similarity of the marks; 4. evidence of actual confusion; 5. marketing channels used; 6. likely degree of purchaser care; 7. the intent of defendant in selecting the mark; and 8. likelihood of expansion of the product lines.

*Id.* In applying these factors, a court should consider that:

> These factors imply no mathematical precision, but are simply a guide to help determine whether confusion is likely. They are also interrelated in effect. Each case presents its own complex set of circumstances and not all of these factors may be particularly helpful in any given case. But a thorough and analytical treatment must nevertheless be attempted. The ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way.

*Homeowners Group, Inc. v. Home Marketing Specialists, Inc.,* 931 F.2d 1100, 1107 (6th Cir. 1991) (footnote omitted).

2. SHIELDZ and SHIELD

Upon consideration of the arguments, applicable law and evidentiary submissions of the parties, and upon application of the relevant factors set forth above, the Court finds Plaintiffs have not demonstrated "a substantial likelihood or probability of success on the merits." *Deja Vu of Cincinnati, L.L.C. v. The Union Township Board of Trustees, et al.,* 411 F.3d 777, 782 (6th Cir. 2005). Therefore, the extraordinary relief of a temporary restraining order is not warranted.

"When a trademark is federally registered, there is a presumption that the term is non-generic and the defendant bears the burden of overcoming this presumption." *Nartron Corp., v. STMicroelectronics, Inc.,* 305 F.3d 397, 405 (6th Cir. 2002). The Court finds the term "shield" to be a common trademark term in the paint, primer and wallcovering market. The evidence presented to the Court demonstrates that thirty-seven products, including Glidden's own "WONDER-SHIELD" product, incorporate "shield" in the trademark. Defendant's "WONDER-SHIELD" product was trademarked three years before Plaintiff's "SHIELDZ" trademark was registered. The existence of thirty-seven products with the word "SHIELD" in their name suggests there is unlikely to be confusion between Glidden and Zinsser products.

Furthermore, the house mark "GLIDDEN" in connection with "SHIELD" makes confusion less likely. "The use of a challenged junior mark together with a house mark or house tradename can distinguish the challenged junior mark from the senior mark and make confusion less likely." *Autozone, Inc. v. Tandy Corp.,* 373 F.3d 786, 796 (6th Cir. 2004). A comparison of the two products reveals Glidden's house mark is more prominent than Zinsser's.

The Court also has no evidence of intent or actual confusion at this stage of the litigation.

The remaining factors do not demonstrate a substantial likelihood of success on the merits sufficient to support the issuance of a temporary restraining order.

3. <u>SPOTPRIME and SPOT PRIMER</u>

Upon consideration of the relevant factors set forth above, the Court finds that Plaintiffs have not met its burden of showing a strong probability of success on the merits with regard to infringement of the SPOTPRIME mark. The most telling factors in the Court's analysis are the strength of the mark, the marketing channels used by the respective parties, and the degree of purchaser care.

Zinsser's SPOTPRIME mark is weak because it is a generic term, describing the type or use of the product. *Nartron Corp. v. ST Microelectronics, Inc*., 305 F. 3d 397, 404-405 (6th Cir. 2002). In fact, on the Zinsser website, the glossary includes "spot prime" among its definitions of painting-related techniques. Moreover, the name is made up of two common words in the trade and thus, fail, in combination, to create a protected mark. *See In Re Quik-Print Copy Shops, Inc*., 616 F. 2d 523 (C.C.P.A. 1980)

It is also significant that Zinsser has only owned the registration of the SPOTPRIME mark since April 11, 2006, and has marketed the product since February of 2005. Thus, the non-existence of a long-standing, identifiable mark owned by Zinsser in this specialized paint product category militates against a determination that the Glidden product is infringing.

The Home Depot stores have never sold Zinsser's SPOTPRIME and, most importantly, Zinsser has elected to market its product to wood manufacturers – whereas, Glidden has targeted its retailing to the professional painter market. Considering the marketing channels utilized by the parties, those distinct customers, and their level of expertise, it is clear to this Court that the "relevant consumers" would tend to be familiar with specialty paint products and to use a high degree of care in selecting such

products to purchase. Again, the contention by Zinsser that there is a strong likelihood of customer confusion is unavailing.

### B. Irreparable Harm

In trademark infringement cases, "a finding of irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears." *Wynn Oil Co. v. American Way Serv. Corp.,* 943 F.2d 595, 608 (6th Cir. 1991) (internal quotation and citation omitted). Since the court has concluded the likelihood of success on the merits and the likelihood of confusion are not strong or substantial, there is no presumption of irreparable injury. Moreover, Plaintiffs have put forth no additional evidence to show irreparable harm. This factor weighs against granting the TRO.

### C. Substantial Harm to Others

Glidden contends that its business and its relationship with The Home Depot will be severely damaged if this court grants the relief Plaintiffs seek and recalls Glidden's new product line. (Resar Aff. ¶ 25, ECF No. 8, Ex. A.) This factor weighs against granting the TRO.

### D. Public Interest

While there is a public interest against confusion in the marketplace, the court has already concluded that the likelihood of confusion in the marketplace is not strong. Thus, this factor weighs neither in favor or against granting the TRO.

### IV. CONCLUSION

Therefore, this court concludes that the Temporary Restraining Order (ECF No. 4.) should be denied. Based on the facts before it, Defendant's new SHIELD and SPOT PRIMER products do not infringe on Plaintiffs' registered trademarks. Thus, there is a low likelihood of success on the merits.

The court will examine the facts and issues in greater detail in a Preliminary Injunction Hearing on June 5, 2006 at 3:30 p.m.

    IT IS SO ORDERED.


                                          /S/ CHRISTOPHER BOYKO
                                          UNITED STATES DISTRICT JUDGE

May 19, 2006